No. 24-1384

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

**PREFERRED BUILDING SERVICES, INC.,**
*Petitioner*,

v.

**NATIONAL LABOR RELATIONS BOARD,**
*Respondent*.

On Petition for Review from the National Labor Relations
Board, Case No. 20–CA–149353.

**SERVICE EMPLOYEES INTERNATIONAL UNION LOCAL 87'S UNOPPOSED
MOTION TO INTERVENE ON BEHALF OF RESPONDENT**

Scott A. Kronland
skronland@altshulerberzon.com
Stacey M. Leyton
sleyton@altshulerberzon.com
ALTSHULER BERZON LLP
177 Post St., Suite 300
San Francisco, CA 94108
Telephone: (415) 421-7151
Facsimile: (415) 362-8064

[Additional counsel listed in signature block]

*Attorneys for Proposed Intervenor
Service Employees International Union Local 87*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................... iii

MOTION FOR LEAVE TO INTERVENE ............................................... 1

BACKGROUND ..................................................................................... 1

ARGUMENT ........................................................................................... 2

    I. The Court should grant SEIU's motion to intervene under Rule 15(d) ........... 3

    II. In the alternative, the Court should grant SEIU's motion to intervene under the Court's general standard for intervention on appeal .................... 6

        A. SEIU has Article III standing ...................................................... 7

        B. SEIU's motion is timely ............................................................. 8

        C. SEIU has a legally protected interest ........................................ 10

        D. The action may impair or impede SEIU's interest ................... 11

        E. No existing party will adequately represent SEIU's interest ................. 11

    III. CONCLUSION ........................................................................... 13

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ............. 15

CORPORATE DISCLOSURE STATEMENT ...................................... 17

CERTIFICATE OF COMPLIANCE .................................................... 18

CERTIFICATE OF SERVICE .............................................................. 19

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Admiral Ins. Co. v. Nat'l Cas. Co.*,
    137 F.R.D. 176 (D.D.C. 1991) ................................................................9

*Amalgamated Transit Union Int'l, AFL-CIO v. Donovan*,
    771 F.2d 1551 (D.C. Cir. 1985) ........................................................6, 7

*Cameron v. EMW Women's Surgical Center, P.S.C.*,
    595 U.S. 267 (2022) ......................................................................6, 8, 9

*Chatham Manufacturing Company v. NLRB*,
    404 F.2d 1116 (4th Cir. 1968) ............................................................8

*Crossroads Grassroots Pol'y Strategies v. Fed. Election Comm'n*,
    788 F.3d 312 (D.C. Cir. 2015) .....................................................6, 7, 10

*Ctr. for Biological Diversity v. U.S. Dep't of the Interior*,
    640 F.Supp.3d 59 (D.D.C. 2022) ....................................................9, 11

*Fund For Animals, Inc. v. Norton*,
    322 F.3d 728 (D.C. Cir. 2003) ..............................................7, 9, 10, 11

*Int'l Union of Operating Eng'rs, Loc. 18 v. NLRB*,
    837 F.3d 593 (6th Cir. 2016) ...............................................................3

*International Union, UAW v. Scofield*,
    382 U.S. 205 (1965) ...................................................3, 7, 8, 10, 12, 13

*Jones v. Prince George's Cnty., Maryland*,
    348 F.3d 1014 (D.C. Cir. 2003) ...........................................................7

*Landreth Timber Co. v. Landreth*,
    731 F.2d 1348 (9th Cir. 1984) .............................................................7

*New Process Steel, L.P. v. NLRB*,
    560 U.S. 674 (2010) ...........................................................................4

*Oil, Chem. & Atomic Workers Loc. Union No. 6-418, AFL-CIO v. NLRB*,
  694 F.2d 1289 (D.C. Cir. 1982) ........................................................7

*SEIU Loc. 87 v. NLRB*,
  995 F.3d 1032 (9th Cir. 2021) ................................................1, 2, 15

*Trbovich v. United Mine Workers of America*,
  404 U.S. 528 (1972) ...........................................................12, 13

*United States v. Am. Tel. & Tel. Co.*,
  642 F.2d 1285 (D.C. Cir. 1980) ........................................................9

*United States v. Brit. Am. Tobacco Australia Servs., Ltd.*,
  437 F.3d 1235 (D.C. Cir. 2006) ........................................................8

*Waterkeeper All., Inc. v. Wheeler*,
  330 F.R.D. 1 (D.D.C. 2018) ............................................................9

*Wildearth Guardians v. Salazar*,
  272 F.R.D. 4 (D.D.C. 2010) ...........................................................11

*Williams & Humbert Ltd. v. W. & H. Trade Marks (Jersey) Ltd.*,
  840 F.2d 72 (D.C. Cir. 1988) ..........................................................9

**Statutes**

29 U.S.C. §153(b) .........................................................................4

29 U.S.C. §153(d) .........................................................................4

29 U.S.C. §160(f) .....................................................................8, 10

NLRA §§8(a)(1) and (3) ..................................................................2

**Rules**

Fed. R. App. P. 15(d) ................................................1, 2, 3, 4, 6, 7, 10

Fed. R. App. P. 26(b) .....................................................................3

Fed. R. Civ. P. 24(a) .....................................................................6

**Other Authorities**

Braden Campbell, *Trump Fired NLRB Officers Over Lack of 'Confidence'* (Jan. 29, 2025), https://www.law360.com/articles/2290687/trump-fired-nlrb-officers-over-lack-of-confidence-.........................................................................4

NLRB, *General Counsels Since 1935*, https://www.nlrb.gov/about-nlrb/who-we-are/general-counsel/general-counsels-since-1935 (last visited Feb. 3, 2025) ...........................................................................4

Parker Purifoy & Robert Iafolla, Trump Fires Labor Board Acting General Counsel Jessica Rutter, Bloomberg Law (Feb. 1, 2025, 9:29 AM PST)..........................................................................................4

## MOTION FOR LEAVE TO INTERVENE

Service Employees International Union Local 87 ("SEIU" or "Union")
moves for leave to intervene in this action pursuant to Rule 15(d) of the Federal
Rules of Appellate Procedure or, in the alternative, under the general standards
governing intervention on appeal. The National Labor Relations Board ("NLRB"
or "Board") consents to SEIU's intervention, and Preferred Building Services, Inc.
does not oppose SEIU's intervention.

## BACKGROUND

Petitioner Preferred Building Services, Inc. ("Preferred") employs janitors in
San Francisco. This dispute arises out of Preferred's unlawful threats,
interrogations, surveillance, and termination of employees after they joined
together to protest over their poor working conditions. Doc. 2091634-A (filed Dec.
26, 2024) at 12-13.

In the fall of 2014, janitors who were jointly employed by Preferred and its
subcontractor, Ortiz Janitorial Services ("Ortiz"), sought help from SEIU and the
San Francisco Living Wage Coalition. *Id.* at 1. The workers, joined by SEIU
representatives, protested outside the building where they worked over poor
working conditions, including egregious sexual harassment and low wages. *Id.*
Preferred and Ortiz then engaged in a campaign of retaliation by, among other
things, terminating the workers they perceived to have been involved in the
protests. *Id.* at 1-2; *SEIU Loc. 87 v. NLRB*, 995 F.3d 1032, 1036 (9th Cir. 2021).

SEIU assisted the workers in their protest and, following Preferred's
retaliation against the workers, filed an unfair labor practice charge with the

NLRB, alleging that Preferred's retaliatory conduct violated the National Labor Relations Act ("NLRA").  Doc. 2091634-A at 1-2.

An administrative law judge ("ALJ") found that Preferred and Ortiz had engaged in unfair labor practices by threatening and discharging employees in retaliation for picketing and union activity.  *SEIU Loc. 87*, 995 F.3d at 1037.  The Board, however, rejected the ALJ's ruling.  The Board reasoned that the workers had conducted an unlawful secondary picket and, therefore, that Preferred's retaliation against the workers did not violate the NLRA.  *See* Doc. 2091634-A at 1.  SEIU petitioned for review of that decision in the Ninth Circuit and, on April 28, 2021, the Ninth Circuit granted SEIU's petition, holding that the Board's finding that the workers engaged in unlawful secondary picketing was not supported by substantial evidence.  *Id.*; *SEIU Loc. 87*, 995 F.3d at 1039.  The Ninth Circuit remanded the case to the Board.  *SEIU Loc. 87*, 995 F.3d at 1044.

On December 16, 2024, the Board issued its supplemental decision and order, finding that Preferred committed numerous violations of NLRA Sections 8(a)(1) and (3).  Doc. 2091634-A at 1.  Preferred filed a petition for review of the Board's supplemental decision and order in this Court on December 26, 2024.  *See* Doc. 2091634.

## ARGUMENT

I.    **The Court should grant SEIU's motion to intervene under Rule 15(d).**

Under Federal Rule of Appellate Procedure 15(d), an interested party may move to intervene in the Court of Appeals in an action involving the review or

enforcement of an agency order.  In *International Union, UAW v. Scofield*, 382 U.S. 205, 208 (1965), the Supreme Court held that "the successful charging party … ha[s] a right to intervene in the Court of Appeals proceeding which reviews or enforces Labor Board orders."

Here, SEIU was the successful charging party in the administrative proceeding before the Board.  Doc. 2091634-A at 1.  SEIU has a direct and substantial interest in defending the Board's ruling.  Moreover, SEIU's intervention will not delay any future schedule for briefing that may be ordered by this Court because this Court has not yet ordered any briefing and SEIU will comply with all applicable briefing schedules.

Rule 15(d) provides for automatic intervention when a motion to intervene is filed "within 30 days after the petition for review."  But that 30-day deadline is a non-jurisdictional claims-processing rule.  *See Int'l Union of Operating Eng'rs, Loc. 18 v. NLRB*, 837 F.3d 593, 595-96 (6th Cir. 2016).  As a result, this Court may grant a later motion to intervene when there is good cause to do so.  *Id.* (holding 30-day filing window non-jurisdictional when party intervenes in petition for review from Board decision, and permitting late-intervention); *cf.* Fed. R. App. P. 26(b) ("For good cause, the court may extend the time prescribed by these rules ….").

SEIU has good cause for filing this motion 11 days after the time prescribed by Rule 15(d), because very recent events put SEIU on notice that its interests in this case may not be adequately protected by the Board and, therefore, that SEIU must intervene to protect its interests.  On January 28, 2025, the President removed

Board Member Gwynne Wilcox from office, leaving the Board without a quorum and unable to act.  Ex. A;[1] 29 U.S.C. §153(b); *New Process Steel, L.P. v. NLRB*, 560 U.S. 674, 676 (2010).  The same day, the President removed Jennifer Abruzzo, the Board's General Counsel, who is responsible for the supervision of all Board attorneys and employees and for the prosecution of unfair labor practice cases, including this one.  Ex. A; 29 U.S.C. §153(d).

Member Wilcox and General Counsel Abruzzo were expressly removed based on the President's determination that they "ha[d] not … been operating in a manner consistent with the objectives of [the] administration," including because they were "unduly disfavoring the interests of employers …."  Ex. A.  The administration cited their support of "a new joint employer rule" as evidence of their disfavor of employers.  *Id.*  Days after the removal of Member Wilcox and General Counsel Abruzzo, on February 1, 2025, the Board's then-acting General Counsel, Jessica Rutter, was also removed from office.[2]

---

[1] The letter informing Member Wilcox and General Counsel Abruzzo that they were removed from their posts, which was sent by Trent Morse, Deputy Director of Presidential Personnel, is attached as Exhibit A.  The letter was published by Law 360 with an accompanying article, Braden Campbell, *Trump Fired NLRB Officers Over Lack of 'Confidence'*, Law360 (Jan. 29, 2025), https://www.law360.com/articles/2290687/trump-fired-nlrb-officers-over-lack-of-confidence-.  The underlying article is attached as Exhibit B.

[2] NLRB, *General Counsels Since 1935*, https://www.nlrb.gov/about-nlrb/who-we-are/general-counsel/general-counsels-since-1935 (last visited Feb. 3, 2025); *see also* Parker Purifoy & Robert Iafolla, *Trump Fires Labor Board Acting General Counsel Jessica Rutter*, Bloomberg Law (Feb. 1, 2025, 9:29 AM PST) (attached as Exhibit C).

These recent actions have raised significant doubt as to whether the Board will vigorously defend the decision under review—which makes it essential that the charging party intervene. The General Counsel who argued for the positions adopted in the underlying decision was expressly fired for taking stances that the President disagrees with—including on the joint employment standard, which is at issue in this case—which suggests that a new General Counsel (if and when appointed and confirmed) may not vigorously defend those positions. Indeed, these personnel decisions have already prompted the Board to cease defense of positions that it had taken in active litigation. *See Space Exploration Technologies Corp. v. NLRB*, Letter Filed by Appellants, No. 24-50627, Doc. 175-1 (5th Cir. Feb. 3, 2025) (informing court that, "[i]n light of … executive actions," the Board would not address arguments defending the constitutionality of Board-member removal restrictions despite originally raising those arguments in its briefing). Moreover, the President's firing of Board Member Wilcox suggests that the Board may lack a quorum or have a majority that disagrees with the decision below and, therefore, may not vigorously defend the decision below.

Further, fewer than 10 days have passed since the Board filed applications for enforcement. *See NLRB v. Preferred Building Services*, Cross-Application for Enforcement, Doc. 2097374, No. 25-1042 (D.C. Cir. Jan. 29, 2025); *NLRB v. Rafael Ortiz*, Application for Enforcement, Doc. 2097580, No. 25-1043 (D.C. Cir. Jan. 29, 2025). Those appeals have now been consolidated with this one. Clerk's Ord. 2097379; Clerk's Ord. 2097615. Finally, no party opposes SEIU's intervention.

For these reasons, the Court should excuse SEIU's 11 day late Rule 15(d) motion and allow SEIU to intervene.

## II. In the alternative, the Court should grant SEIU's motion to intervene under the Court's general standard for intervention on appeal.

Regardless of whether SEIU is entitled to intervene under Rule 15(d), SEIU should be permitted to intervene because SEIU meets the general standards for intervention as of right. "No statute or rule provides a general standard to apply in deciding whether intervention on appeal should be allowed." *Cameron v. EMW Women's Surgical Center, P.S.C.,* 595 U.S. 267, 276 (2022). Therefore, courts "consider [] the policies underlying intervention in the district courts, including the legal interest that a party seeks to protect through intervention on appeal." *Id*. at 277 (cleaned up).

The policies underlying intervention in district courts are provided by Federal Rule of Civil Procedure 24(a), which permits intervention of right when a movant demonstrates: "1) timeliness of the application to intervene; 2) a legally protected interest; 3) that the action, as a practical matter, impairs or impedes that interest; and 4) that no party to the action can adequately represent the potential intervenor's interest." *Crossroads Grassroots Pol'y Strategies v. Fed. Election Comm'n*, 788 F.3d 312, 320 (D.C. Cir. 2015). This Court also requires that intervenors have Article III standing. *Id.* at 316. Applying these elements, intervention as of right is warranted here.[3]

---

[3] This Circuit has stated that parties who did not participate in district court proceedings should be permitted to intervene on appeal only in "exceptional case[s] for imperative reasons." *Amalgamated Transit Union Int'l, AFL-CIO v.*

A. SEIU has Article III standing

"To establish standing under Article III, a prospective intervenor—like any party—must show: (1) injury-in-fact, (2) causation, and (3) redressability." *Fund For Animals, Inc. v. Norton*, 322 F.3d 728, 732-33 (D.C. Cir. 2003). A party can establish injury-in-fact when it "benefits from agency action, the action is then challenged in court, and an unfavorable decision would remove the party's benefit." *Crossroads Grassroots Pol'y Strategies*, 788 F.3d at 317 (D.C. Cir. 2015). A putative intervenor has Article III standing where it has a "concrete and cognizable interest in th[e] litigation." *Jones v. Prince George's Cnty., Maryland*, 348 F.3d 1014, 1018 (D.C. Cir. 2003).

As the charging party, SEIU indisputably has standing. Indeed, in *Scofield*, a unanimous Court held that the charging party in Board proceedings has, by dint of its status as charging party, sufficient private interest to intervene on appeal of the Board's order. 382 U.S. at 218. That charging parties have the right to intervene under Rule 15(d) shows that they have Article III standing. Similarly, had the Board given SEIU "less than [it] requested," SEIU would be "aggrieved" under the NLRA and have had statutory standing to intervene. *Oil, Chem. & Atomic Workers Loc. Union No. 6-418, AFL-CIO v. NLRB*, 694 F.2d 1289, 1294 (D.C. Cir. 1982)

_____

*Donovan*, 771 F.2d 1551, 1552 (D.C. Cir. 1985) (citing *Landreth Timber Co. v. Landreth*, 731 F.2d 1348, 1353 (9th Cir. 1984)). But the exceptional-case standard for intervention on appeal applies where the putative intervenor did not seek intervention in the district court. *Id.* at 1552. There was no district court proceeding here, and SEIU participated in the Board proceedings leading to the decision under review, successfully petitioned for review of a prior Board decision in the Ninth Circuit, and fully participated as a party in the Ninth Circuit proceeding. *See* Doc. 2091634-A at 1.

(quoting *Chatham Manufacturing Company v. NLRB*, 404 F.2d 1116, 1118 (4th Cir. 1968)); 29 U.S.C. §160(f). That SEIU is intervening, as opposed to petitioning for review, makes no difference. SEIU should have the opportunity to intervene to protect the Board's decision and to thereby ensure that it is not aggrieved.

*Scofield* makes clear that charging parties have interests in NLRB proceedings. *Scofield* also recognizes that this interest enables the charging party to participate throughout the NLRB proceeding and any appeal in the circuit courts defending the outcome of that proceeding.

In addition, SEIU is a labor organization that organizes janitors to collectively advocate for improvements in their terms and conditions of employment. The Board found that the workers in this case were subject to unlawful retaliation because they joined together with SEIU in a protest. SEIU's mission is impaired when workers are subject to unlawful retaliation for such collective activity.

## B. SEIU's motion is timely

SEIU satisfies the general timeliness requirement. In analyzing timeliness, this Court considers "all the circumstances" surrounding a motion to intervene, including how much "time elapsed since the inception of the suit, the purpose for which intervention is sought, the need for intervention as a means of preserving the applicant's rights, and the probability of prejudice to those already parties in the case." *United States v. Brit. Am. Tobacco Australia Servs., Ltd.*, 437 F.3d 1235, 1238 (D.C. Cir. 2006) (quoting *United States v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1295 (D.C. Cir. 1980)); *see also Cameron*, 595 U.S. at 279-80 (even if long delay

in intervening, most important factor is whether party sought to intervene when it became clear that its interests would not be protected by existing parties).  Motions to intervene are generally timely when filed before "the major substantive issues in th[e] case" have been "argued or resolved."  *Admiral Ins. Co. v. Nat'l Cas. Co.*, 137 F.R.D. 176, 177 (D.D.C. 1991).  And "a court should be … reluctant to refuse when intervention is sought of right …."  *Williams & Humbert Ltd. v. W. & H. Trade Marks (Jersey) Ltd.*, 840 F.2d 72, 75 (D.C. Cir. 1988).

Here, SEIU filed its motion to intervene long "before this Court had occasion to make any merits decisions."  *Waterkeeper All., Inc. v. Wheeler*, 330 F.R.D. 1, 6 (D.D.C. 2018).  In fact, a briefing schedule for the merits briefing has not even been set.  SEIU's motion is therefore timely.  *See Fund For Animals, Inc.*, 322 F.3d at 735 (intervention motion timely when filed "less than two months after the plaintiffs filed their complaint and before the defendants filed an answer"); *Ctr. for Biological Diversity v. U.S. Dep't of the Interior*, 640 F.Supp.3d 59, 67 (D.D.C. 2022) (motion to intervene timely when filed "within a few months after the original complaint was filed").  SEIU's motion also will not prejudice existing parties. SEIU will abide by any briefing schedule that is agreed upon by the existing parties to this case.

Moreover, SEIU moved to intervene as soon as it became clear that its interests would no longer be protected.  *Cameron*, 595 U.S. at 279 (finding intervention timely when made years into litigation and after court of appeals had issued decision on merits).  As previously explained, SEIU filed this motion promptly after the termination of a Board Member and the Board's General

Counsel signaled that the Board may not protect SEIU's interests in this case. *Supra* at 4-5.[4]

## C. SEIU has a legally protected interest

A movant has a legally protected interest where it has constitutional standing. *Fund For Animals, Inc.*, 322 F.3d at 735; *Crossroads Grassroots Pol'y Strategies*, 788 F.3d at 320. Because SEIU has Article III standing, it also has a legally protected interest.

Again, *Scofield* compels this conclusion. In *Scofield*, the Court found that the charging party in Board proceedings has sufficient interest to intervene on appeal of the Board's order. 382 U.S. at 218. Indeed, the Board's own processes recognize the distinct legal interest of charging parties. Throughout Board proceedings, "the charging party is accorded formal recognition: [they] participate[] in the hearings as a party; [they] may call witnesses and cross-examine others, may file exceptions to any order of the [ALJ], and may file a petition for reconsideration to a Board order." *Id.* at 219 (cleaned up). The charging party, if it loses, can file a petition for review in the circuit courts as an aggrieved party. *Id.*; 29 U.S.C. §160(f).

The workers in this case also suffered unlawful retaliation because they participated in a protest with SEIU. As the Board found, such collective activity is protected by the NLRA. SEIU has a legally protected interest (*i.e.* an interest

---

[4] Rule 15(d)'s 30-day filing window applies only to parties "interven[ing] in a proceeding *under this rule*." Fed. R. App. P. 15(d) (emphasis added). It therefore does not prevent SEIU from availing itself of other rules and procedures that may permit intervention.

protected by the NLRA) in being able to participate in collective activity with workers.

D. <u>The action may impair or impede SEIU's interest</u>

Given SEIU's substantial legal interest in this case, it follows that this interest may be impaired by this petition for review. The Board's decision vindicated SEIU's interests by finding that Preferred's retaliation was unlawful and granting workers substantial remedies, including a broad cease-and-desist order, restoration of a cancelled subcontract, and backpay and reinstatement for affected workers. Doc. 2091634-A at 13-15. Preferred is asking this Court to "review and modify or set aside" the Board's decision. Doc. 2091634 at 2. If Preferred is successful, SEIU's interest will be impaired. And workers, who have already gone over ten years without recompense for the loss of their jobs and other injuries, will once again be left without any remedy.

E. <u>No existing party will adequately represent SEIU's interest</u>

Finally, SEIU's interests will not be adequately represented by the Board. "This factor is 'not onerous,' and generally allows parties to intervene unless the adequacy of representation is 'clear.'" *Ctr. for Biological Diversity*, 640 F.Supp.3d at 68 (quoting *Fund For Animals, Inc.*, 322 F.3d at 735). "Governmental entities generally cannot represent the 'more narrow and parochial financial interests' of a private party." *Wildearth Guardians v. Salazar*, 272 F.R.D. 4, 15 (D.D.C. 2010) (quoting *Fund For Animals, Inc.*, 322 F.3d at 737)); *see also Fund For Animals, Inc.*, 322 F.3d at 736-37.

As the Supreme Court acknowledged in *Trbovich v. United Mine Workers of America*, government agencies must, when advancing grievances, balance the desires of interested private parties with what government officials view as the broader public interest. 404 U.S. 528, 538-39 (1972). Charging parties, on the other hand, advance only their own interests. *Id.* Even if government agencies "perform [their] duties, broadly conceived, as well as can be expected," the private party "may have a valid complaint about the performance of 'his lawyer'" (meaning the government lawyer charged to prosecute a case on his behalf), because the parties pursue different goals. *Id.* at 539. As the Court held, these structurally divergent interests render a government agency an inadequate representative for private parties. *Id.* (reversing lower court's denial of motion for leave to intervene as of right).

The Supreme Court's unanimous holding in *Scofield* stands for a similar proposition. There, the Court reasoned that the union initiating an unfair labor practice charge has an interest in the litigation that is distinct from "another member of the public whose interests the Board is designed to serve." 382 U.S. at 218. The Board's statutory duty to enforce "public right[s]" does not sufficiently protect the charging party's "parochial private interests." *Id.* at 218, 220. Instead, because the NLRA "interblend[s]" "public" and "private interests," "the charging party may have vital private rights in the Board proceeding." *Id.* at 220 (cleaned up). As in *Trbovich*, the risk that the Board would not advance these "vital private rights" justified the union's intervention. *Id.* SEIU's interests here—achieving

12

maximal backpay for its members and ensuring Preferred is bound by the Board's broad cease-and-desist order—would not necessarily be advanced by the Board.

Thus, as in *Scofield* and *Trbovich*, the Board's interests are distinct from SEIU's, and SEIU can adequately protect its interests only by intervening. The risk that SEIU's interests will not be adequately represented is exacerbated by recent events. As discussed, the President recently removed a Board member (leaving the Board without a quorum) and fired the Board's General Counsel based on the President's view that they had unduly favored the interests of workers over the interests of employers. Ex. A. And the change in administration has already led the Board to change its positions in ongoing litigation. *See supra* at 5; *Space Exploration Technologies Corp. v. NLRB*, Letter Filed by Appellants, No. 24-50627, Doc. 175-1 (5th Cir. Feb. 3, 2025). Thus, there is a substantial risk that the Board will not vigorously defend the decision below in all respects, or make all arguments in support of the decision. Finally, *Scofield* makes clear that *even if* the Board remains willing to vigorously defend its decision, SEIU has divergent "parochial private interests" that justify intervention. *Scofield*, 382 U.S. at 218, 220.

### III. Conclusion

For the reasons stated, SEIU respectfully asks this Court to grant its unopposed motion to intervene.

Dated: February 7, 2024          Respectfully submitted,

/s/ Scott A. Kronland
   Scott A. Kronland

Scott A. Kronland
skronland@altshulerberzon.com
Stacey M. Leyton (*pro hac vice forthcoming*)
sleyton@altshulerberzon.com
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Telephone: (415) 421-7151
Facsimile: (415) 362-8064

John D'Elia
John.D'Elia@seiu.org
Steve Ury
steven.ury@seiu.org
SERVICE EMPLOYEES INTERNATIONAL
UNION
1800 Massachusetts Avenue NW
Washington, DC 20036
Telephone: (202) 507-1670

Elena Medina Neuman (*pro hac vice forthcoming*)
Elena.Medina@seiu.org
SERVICE EMPLOYEES INTERNATIONAL
UNION
3055 Wilshire Boulevard, Suite 1050
Los Angeles, CA 90638
Telephone: (213) 401-3323

*Attorneys for Proposed Intervenor*
*Service Employees International Union Local 87*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES
### (Circuit Rule 28(a)(1))

Pursuant to D.C. Circuit Rule 27(a)(4) and 28(a)(1), SEIU submits the following certificate as to parties, rulings, and related cases:

### A. Parties and *Amici*

The parties appearing before the National Labor Relations Board and in this Court include: the National Labor Relations Board, Rafael Ortiz d/b/a Ortiz Janitorial Services, and Preferred Building Services, Inc. SEIU appeared before the National Labor Relations Board and is a proposed-intervener in this Court.

### B. Rulings Under Review

The ruling under review is the National Labor Relation Board's Decision and Order, Case 20-CA-149353, issued December 16, 2024 and published at 374 NLRB No. 11. That decision is attached as Exhibit A to the Preferred Building Services, Inc.'s petition for review.

### C. Related Cases

SEIU petitioned for review of a previous order of the National Labor Relations Board, 366 NLRB No. 159 (Aug. 28, 2018), in this case. The Ninth Circuit granted SEIU's petition in *SEIU Loc. 87 v. NLRB*, 995 F.3d 1032, 1036 (9th Cir. 2021), and remanded the case to the National Labor Relations Board.

The National Labor Relations Board has recently filed two enforcement actions in this Court against Preferred Building Services, Inc. and Rafael Ortiz

d/b/a Ortiz Janitorial Services. This Court consolidated those cases—25-1042 and 25-1043—with this case on January 30, 2025. Clerk's Ord. 2097379; Clerk's Ord. 2097615.

Dated: February 7, 2025

Respectfully submitted,

*/s/ Scott A. Kronland*
Scott A. Kronland
skronland@altshulerberzon.com
Stacey M. Leyton
sleyton@altshulerberzon.com
ALTSHULER BERZON LLP
177 Post St., Suite 300
San Francisco, CA 94108
Telephone: (415) 421-7151
Facsimile: (415) 362-8064

*Attorneys for Proposed Intervenor*
*Service Employees International Union*
*Local 87*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Service Employes International Union Local 87 ("SEIU" or "Union") makes the following corporate disclosure statement:

1. SEIU does not have any parent corporations; and

2. No publicly held corporation owns 10 percent or more of SEIU's stock.

**CERTIFICATE OF COMPLIANCE**

I hereby certify that the motion complies with the type-volume limitations of Fed. R. App. Pr. 27(d)(1)(E) & 27(d)(2)(A) because it has been prepared in 14-point Times New Roman font and contains 3,386 words, excluding the parts of the motion exempted under Fed. R. App. P. 32(f), according to the count of Microsoft word.

Dated: February 7, 2025

*/s/ Scott A. Kronland*
Scott A. Kronland

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing motion was filed February 7, 2025, with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit through the Court's CM/ECF system, and that, therefore, service was accomplished upon counsel of record by the Court's system.

Dated: February 7, 2025          */s/ Scott A. Kronland*
                                                          Scott A. Kronland

**EXHIBIT A**

| From: | Morse, Trent M. EOP/WHO [   6   ]@who.eop.gov] |
| Sent: | 1/28/2025 3:38:24 AM |
| To: | jennifer.abruzzo@nlrb.gov; gwynne.wilcox@nlrb.gov |
| CC: | Gor, Sergio N. EOP/WHO [   6   ]@who.eop.gov] |
| Subject: | [EXTERNAL] Notification from PPO RE: NLRB |

Gwynne and Jennifer,

On behalf of President Donald J. Trump, please see the letter below.

Trent Morse
Deputy Director
Office of Presidential Personnel


Article II of the U.S. Constitution vests the entire executive power in a single President, who alone is accountable to the people. Pursuant to my constitutional duty to "take Care that the Laws be faithfully executed," U.S. Const. Art. II, §3, I must ensure that those who wield executive power on my behalf are held accountable. Of particular importance, heads of agencies within the Executive Branch must share the objectives of my administration and its commitment to serving the will of the American people.

In my judgment, the National Labor Relations Board is not presently fulfilling its responsibility to the American people. The NLRB wields immense executive power over private employment relationships and relations with unions—an area with vast economic consequences.

The aims and purposes of the Administration with respect to the work on the Board can be carried out most effectively with personnel of my own selection. To that end, effective as of this date, Gwynne A. Wilcox and Jennifer Abruzzo are hereby removed from the office of Members of the National Labor Relations Board.[1]

In addition, these two Board Members have not, in my judgment, been operating in a manner consistent with the objectives of my administration. In my judgment, Members Wilcox and General Counsel Abruzzo have adopted a host of decisions that have improperly cabined employers' rights to speak on the subject of unionization, raising serious First Amendment concerns about the censorship of important

[1] While the National Labor Relations Act purports to limit removal of Board members to "neglect of duty or malfeasance in office, but for no other cause," 29 U.S.C. § 153(a), this limitation is inconsistent with the vesting of the executive Power in the President and his constitutional duty to take care that the laws are faithfully executed and thus does not operate as a restriction on my ability to remove Board members. U.S. Const., Art. II, § 1, cl. 1; *id.* at § 3. "[A]s a general matter,' the Constitution gives the President 'the authority to remove those who assist him in carrying out his duties.'" *Seila Law LLC v. Consumer Financial Protection Bureau*, 591 U.S. 197, 204 (2020) (quoting *Free Enterprise Fund v. Public Company Accounting Oversight Bd.*, 561 U.S. 477, 513-514 (2010)). There are two recognized exceptions: one for certain inferior officers and one for "a multimember body of experts, balanced along partisan lines, that performed legislative and judicial functions and was said not to exercise any executive power." *Id.* at 216. Board members have broad policy making responsibilities and thus are not inferior officers. *See* 29 U.S.C § 160(a); *Seila Law LLC*, 591 U.S. at 219. Moreover, while the NLRB is a multimember board, it is not "balanced along partisan lines." Finally, and most importantly, the Board exercises core executive powers. To wit, the Board has authority to promulgate binding regulations (*see* 29 U.S.C. § 159; *Seila Law LLC*, 591 U.S. at 218; pursue enforcement actions in federal court (*see* 29 USC 160(e); *Seila Law LLC*, 591 U.S. at 219); and unilaterally issue final decisions awarding equitable relief in administrative adjudications (*see* 29 USC 160(c)); *Seila Law LLC*, 591 U.S. at 219). Since neither exception applies to members of the NLRB, you are removable with or without statutory cause by the President.

speech. Several such decisions were issued on the eve of the new Administration. They have also issued decisions that, in my judgment, have vastly exceeded the bounds of the National Labor Relations Act. To take just one example, they supported a new joint employer rule—a rule that courts then invalidated and the Board seemingly acknowledged could not go forward.

Viewing their record collectively, I lack confidence that Commissioners Wilcox and General Counsel Abruzzo can fairly evaluate matters before them without unduly disfavoring the interests of employers large and small. The country is eager to get to work, revitalize our economy, and operate under clear, predictable rules that are fair to employers, unions, and employees alike. I lack confidence that Commissioners Wilcox and General Counsel Abruzzo will faithfully execute those objectives.

[1] While the National Labor Relations Act purports to limit removal of Board members to "neglect of duty or malfeasance in office, but for no other cause," 29 U.S.C. § 153(a), this limitation is inconsistent with the vesting of the executive Power in the President and his constitutional duty to take care that the laws are faithfully executed and thus does not operate as a restriction on my ability to remove Board members. U.S. Const., Art. II, § 1, cl. 1; *id.* at § 3. "[A]s a general matter,' the Constitution gives the President 'the authority to remove those who assist him in carrying out his duties.'" *Seila Law LLC v. Consumer Financial Protection Bureau*, 591 U.S. 197, 204 (2020) (quoting *Free Enterprise Fund v. Public Company Accounting Oversight Bd.*, 561 U.S. 477, 513-514 (2010)). There are two recognized exceptions: one for certain inferior officers and one for "a multimember body of experts, balanced along partisan lines, that performed legislative and judicial functions and was said not to exercise any executive power." *Id.* at 216. Board members have broad policy making responsibilities and thus are not inferior officers. *See* 29 U.S.C § 160(a). Moreover, while the NLRB is a multimember board, it is not "balanced along partisan lines." Finally, and most importantly, the Board exercises core executive powers. To wit, the Board has authority to promulgate binding regulations (*see* 29 U.S.C. § 159; *Seila Law LLC*, 591 U.S. at 218; pursue enforcement actions in federal court (*see* 29 USC 160(e); *Seila Law LLC*, 591 U.S. at 219); and unilaterally issue final decisions awarding equitable relief in administrative adjudications (*see* 29 USC 160(c)); *Seila Law LLC*, 591 U.S. at 219). Since neither exception applies to members of the NLRB, you are removable with or without statutory cause by the President.

# EXHIBIT B


**Portfolio Media. Inc.** | 230 Park Avenue, 7th Floor | New York, NY 10169 | www.law360.com
Phone: +1 646 783 7100 | Fax: +1 646 783 7161 | customerservice@law360.com

# Trump Fired NLRB Officers Over Lack Of 'Confidence'

By **Braden Campbell**

Law360 (January 29, 2025, 6:04 PM EST) -- President Donald Trump fired National Labor Relations Board member Gwynne Wilcox and general counsel Jennifer Abruzzo because of doubts they would give employers a fair shake, asserting in a discharge letter obtained by Law360 on Wednesday that he may fire NLRB members at will.



President Donald Trump's letter axing NLRB commissioner Gwynne Wilcox and general counsel Jennifer Abruzzo adopts the so-called unitary executive theory, which underlies recent U.S. Supreme Court decisions expanding the president's power to fire executive branch officials. (Allison Robbert/Pool via AP, File)

Trump endorsed the theory that the president has complete power to hold executive branch officials to account in **a letter** sent by the Office of Presidential Personnel early Tuesday morning. The president said Wilcox and Abruzzo, both Democrats and former union counsel, "have not, in my judgment, been operating in a manner consistent with the objectives of my administration."

"The country is eager to get to work, revitalize our economy, and operate under clear, predictable rules that are fair to employers, unions, and employees alike," Trump wrote. "I lack confidence that commissioners Wilcox and general counsel Abruzzo will faithfully execute those objectives."

Law360 obtained the letter through a Freedom of Information Act request.

Trump shook up operations at the labor board Tuesday by **firing Wilcox and Abruzzo**, leaving the agency's panel of adjudicators without a quorum with which to resolve cases and its prosecutor's office

without the leader who had steered agency litigation since July 2021. Abruzzo's removal was expected after former President Joe Biden **fired former general counsel Peter Robb** four years ago, but the unprecedented removal of a sitting NLRB member came as a shock to members of the labor law community.

Trump did not remove Republican chair Marvin Kaplan or Democratic member David Prouty.

The president's letter underscores the expectation that Wilcox's firing will test the president's power to fire officials at the NLRB and similar agencies, shedding light on his disputed legal basis for removing her.

The president asserted that Article II of the U.S. Constitution "vests the entire executive power in a single president" and obligates him to "ensure that those who wield executive power on my behalf are held accountable." The letter adopts the so-called unitary executive theory, which underlies recent U.S. Supreme Court decisions expanding the president's power to fire executive branch officials as well as **suits by employers** seeking to establish that parts of the National Labor Relations Act are unconstitutional.

Wilcox has pledged to sue, saying in a statement Tuesday that her firing violated "long-standing Supreme Court precedent."

The NLRA holds that the president may fire NLRB members only "for neglect of duty or malfeasance in office." The Supreme Court held in a 1935 case called Humphrey's Executor v. U.S. 🔴 that similar language protecting members of the similarly structured Federal Trade Commission is constitutional.

In footnotes, the president said the NLRA's protection language is "inconsistent with the vesting of the executive power of the president," citing a 2010 Supreme Court decision called Seila Law v. Consumer Financial Protection Bureau 🔴 and its progeny. In Seila Law, the Supreme Court held that language protecting the CFPB's director from removal was unconstitutional. The court has extended that holding to other agencies but has not disavowed Humphrey's Executor.

The president did not explicitly accuse Wilcox of committing malfeasance or neglecting her duty. Instead, he couched the decision to fire her and Abruzzo in policy differences but curiously conflated their disparate roles in the board's process. The letter faults Wilcox and Abruzzo for adopting decisions "that have improperly cabined employers' rights to speak on the subject of unionization" and "vastly exceeded the bounds of the" NLRA.

"Viewing their record collectively, I lack confidence that commissioners Wilcox and general counsel Abruzzo can fairly evaluate matters before them without unduly disfavoring the interests of employers large and small," the president said.

As general counsel, Abruzzo helped shape NLRB policy by urging the board to adopt her views of the NLRA but did not have a say in its decisions. The president did not say why he did not also remove Prouty, who voted with Wilcox to adopt the policies the letter criticized.

--Editing by Nick Petruncio.

All Content © 2003-2025, Portfolio Media, Inc.

# EXHIBIT C

Daily Labor Report ®
Feb. 1, 2025, 9:29 AM PST

# Trump Fires Labor Board Acting General Counsel Jessica Rutter

By Parker Purifoy and Robert Iafolla

Exclusive

---

President Donald Trump fired acting National Labor Relations Board General Counsel Jessica Rutter, once again disrupting leadership at the agency.

The NLRB confirmed the termination to Bloomberg Law on Saturday. Rutter, a Democrat, was previously deputy general counsel under Jennifer Abruzzo. Trump has yet to announce a replacement to act as lead prosecutor for the NLRB and police the nation's private-sector labor laws. Nor has he named a general counsel who will require Senate confirmation.

Trump has moved swiftly to freeze independent agencies, firing Biden appointees Abruzzo and NLRB Member Gwynne Wilcox Jan. 27. Wilcox's termination leaves the board without a quorum, and sets up a legal test of the executive's powers to remove independent agency officials at will.

---

To contact the reporters on this story: Parker Purifoy in Washington at ppurifoy@bloombergindustry.com; Robert Iafolla in Washington at riafolla@bloombergindustry.com

To contact the editors responsible for this story: Genevieve Douglas at gdouglas@bloomberglaw.com; Jay-Anne B. Casuga at jcasuga@bloomberglaw.com

© 2025 Bloomberg Industry Group, Inc.   All Rights Reserved